IN THE UNITED STATE DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DAVID SHEPHERD | |
| | MDL NO. 2:18-mn-2873-RMG |
| **Plaintiff,** | |
| | JUDGE RICHARD GERGEL |
| v. | |
| | CIVIL ACTION NO. 2:22-cv-3819-RMG |
| 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; AMEREX CORPORATION; ARCHROMA U.S., INC., ARKEMA, INC.; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION; CHEMGUARD, INC.; CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; DU PONT DE NEMOURS INC.; DYNAX CORPORATION; E.I. DU PONT DE NEMOURS AND COMPANY; JOHNSON CONTROLS, INC.; HONEYWELL SAFETY PRODUCTS USA, INC.; KIDDE-FENWAL, INC.; KIDDE, PLC; NATIONAL FOAM, INC.; THE CHEMOURS COMPANY; TYCO FIRE PRODUCTS LP, as successor-in-interest to The Ansul Company; RAYTHEON TECHNOLOGIES CORPORATION as successor-in-interest to United Technologies Corporation; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; and JOHN DOE. | DIRECT FILED COMPLAINT AND JURY DEMAND PURSUANT TO CASE MANAGEMENT ORDER NO. 3 |

## COMPLAINT

**COMES NOW** Plaintiff David Shepherd ("Plaintiff"), by and through his counsel, and

alleges as follows for his cause of action against Defendants:

## INTRODUCTION

1.      Plaintiff brings this action for damages for bodily injury resulting from exposure to aqueous film-forming foams (f/k/a "firefighting foam") ("AFFF"), containing the toxic chemicals collectively known as per and poly-fluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS. All Defendants named in this complaint were involved in the designing, marketing, developing, promoting, manufacturing, or otherwise selling or handling of AFFF products containing PFAS.

2.      PFOA and PFOS are extremely toxic chemicals and pose significant risk to health and safety. PFOA and PFOS are man-made chemicals. Evidence has shown that PFAS are carcinogens that may cause a variety of different cancers, including prostate cancer. PFAS remain in the human body and accumulate in the body after each exposure. The Environmental Protection Agency, American Cancer Society, The International Agency for Research on Cancer and the Center for Disease Control and Prevention have all noted the carcinogenic potential of PFAS in AFFF.

3.      AFFF, known to contain PFAS, were used by Plaintiff and firefighters across the country to extinguish fires in training and response exercises. AFFF was developed to extinguish Class B fires, those fires that cannot safely be extinguished with water.

4.      Defendants manufactured, designed, developed, marketed, distributed, and sold or otherwise released into the stream of commerce AFFF with knowledge that it contained PFAS and exposed users of AFFF to the health risks of PFAS.

5.      Defendants knew or should have known about the devastating health effects and risks to the human body caused by the use of AFFF containing PFAS.

6.      Unaware of the potential for higher risks of cancer and other serious diseases, Plaintiff used AFFF products in the course of his employment as a firefighter in both training exercises, active fire duties, and each time he refilled his fire extinguisher tank.

7.      Plaintiff seeks to recover compensatory damages and all other remedies, including but not limited to injunctive, equitable, and declaratory relief, arising out of the significant and permanent damages sustained as a result of the exposure Plaintiff experienced from Defendants' AFFF products containing PFAS in the course of Plaintiff's firefighting activities.

## PARTIES, JURISDICTION, AND VENUE

8.      David Shepherd ("Plaintiff") is a resident of St. Louis County. From 1962 to 2000, Plaintiff regularly used AFFF in various trainings and firefighting activities while employed as a firefighter at both Pattonville and Maryland Heights Fire Departments.

9.      Plaintiff was regularly exposed to AFFF products without warning regarding any potential harmful health effects that could result from such exposure.

10.     In January of 2022, Plaintiff was diagnosed with thyroid cancer and high-grade neuroendocrine carcinoma ("NEC") in his left inguinal lymph nodes with involvement of the left pelvic lymph nodes.

11.     Plaintiff has no family history of cancer.

12.     Defendants are all manufacturers, designers, developers, marketers, distributors, and/or sellers of AFFF products that contain PFAS. The Defendants at all times relevant to this lawsuit, manufactured, designed, developed, marketed, distributed, and/or sold AFFF products to various locations for its use in fighting Class B fires, including those used by Plaintiff at Monarch Fire Protection District.

13.     When used in Defendants intended and directed methods, Plaintiff was exposed over many different instances within the scope of his employment as a firefighter to PFAS that caused Plaintiff to develop NEC and thyroid cancer.

14.     Defendant 3M Company (hereinafter "3M") is a Delaware corporation conducting business throughout the United States with its principal place of business in Minnesota. At all times relevant, 3M designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55144.

15.     Defendant AGC Chemicals Americas, Inc. (hereinafter "AGC") is a Delaware corporation conducting business throughout the United States with its principal place of business in Exton, Pennsylvania. At all times relevant, AGC designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

16.     Defendant Amerex Corporation, also known as Alabama Amerex Corporation, (hereinafter "Amerex") is an Alabama corporation conducting business throughout the United States with its principal place of business in Trussville, Alabama. At all times relevant, Amerex designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

17.     Defendant Archroma U.S., Inc. (hereinafter "Archroma") is a North Carolina corporation conducting business throughout the United States with its principal place of business in Charlotte, North Carolina. At all times relevant, Archroma designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

4

18.    Defendant Arkema, Inc. (hereinafter "Arkema") is a Pennsylvania corporation conducting business throughout the United States with its principal place of business in King of Prussia, Pennsylvania. At all times relevant, Arkema designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

19.    Defendant Buckeye Fire Equipment Company (hereinafter "Buckeye") is a privately-owned company with its headquarters in North Carolina. At all times relevant, Buckeye designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Buckeye has its principal place of business at 110 Kings Rd, Kings Mountain, NC 28086.

20.    Defendant Carrier Global Corporation (hereinafter "Carrier") is a Delaware corporation conducting business throughout the United States with its principal place of business in Palm Beach Gardens, Florida. At all times relevant, Carrier designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

21.    Defendant Chemguard, Inc. (hereinafter "Chemguard") is a Wisconsin corporation with its principal place of business in Wisconsin. At all times relevant, Chemguard designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Chemguard has its principal place of business at One Stanton St, Marinette, WI 54143-2542.

22.    Defendant Chemours Company FC, LLC (hereinafter "Chemours FC") is a Delaware corporation with its principal place of business in Delaware. At all times relevant, Chemours FC designed, marketed, developed, promoted, manufactured and otherwise sold or

handled AFFF products containing PFAS used in firefighting training and firefighting activities. Chemours FC has its principal place of business at 1007 Market St., Wilmington, Delaware 19898.

23.     Defendant The Chemours Company (hereinafter "Chemours") is a Delaware corporation with its principal place of business in Delaware. At all times relevant, Chemours designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Chemours has its principal place of business at 1007 Market St., Wilmington, Delaware 19898.

24.     Defendant Chubb Fire, Ltd. (hereinafter "Chubb Fire") is a foreign private limited company conducting business operations in the United Kingdom and Ireland. Chubb Fire consists of several different subsidiaries and ore divisions including Chubb Fire & Security Ltd., Chubb Security, PLC and Chubb National Foam, Inc. At all times relevant, Chubb Fire designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Chubb Fire maintains a primary office at Littleton Road, Middlesex, Ashford TW15 1TZ in the United Kingdom.

25.     Defendant Corteva, Inc. (hereinafter "Corteva") is a Delaware corporation with its principal place of business in Delaware. At all times relevant, Corteva designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Corteva has its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

26.     Defendant Du Pont de Nemours, Inc. (f/k/a/ as "DowDuPont, Inc.") (hereinafter "DowDuPont") is a Delaware corporation with its principal place of business in Delaware. At all times relevant, DuPont designed, marketed, developed, promoted, manufactured and otherwise

6

sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. DowDuPont has its principal place of business at 974 Centre Road, Wilmington, Delaware 19805.

27.    Defendant Dynax Corporation (hereinafter "Dynax") is a Delaware corporation with its principal place of business in New York. At all times relevant, Dynax designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Dynax has its principal place of business at 103 Fairview Park Drive, Elmsford, New York 10523.

28.    Defendant E.I. Du Pont de Nemours and Company (hereinafter "DuPont") is a Delaware corporation with its principal place of business in Delaware. At all times relevant, DuPont designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. E.I. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

29.    Defendant Johnson Controls, Inc. (hereinafter "Johnson Controls") is a Delaware corporation conducting business throughout the United States with its principal place of business in Milwaukee, Wisconsin. At all times relevant, Johnson Controls designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

30.    Defendant Honeywell Safety Products USA, Inc. (hereinafter "Honeywell") is a Delaware corporation conducting business throughout the United States with its principal place of business in Charlotte, North Carolina. At all times relevant, Honeywell designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

31.     Defendant Kidde-Fenwal, Inc. (hereinafter "Kidde-Fenwal") is a Delaware corporation with its principal place of business in Connecticut. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Kidde-Fenwal designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Kidde-Fenwal has its principal place of business at 1 Financial Plaza, Hartford, Connecticut 06101.

32.     Defendant Kidde P.L.C., Inc. (hereinafter "Kidde P.L.C.") is a foreign corporation organized under the state of Delaware with its principal place of business in Connecticut. Kidde P.L.C. designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Kidde P.L.C. has its principal place of business at 1 Carrier Place, Farmington, Connecticut 06302.

33.     Defendant National Foam, Inc. (hereinafter "National Foam") is a Delaware corporation. At all times relevant, National Foam designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. National Foam has its principal place of business at 141 Junny Road, Angier, NC 27501.

34.     Defendant Tyco Fire Products, L.P. (hereinafter "Tyco") is a Delaware limited partnership with its principal place of business in Pennsylvania. Tyco is successor-in-interest to the Ansul Company. Ansul Company AFFF products containing PFAS were continued to be sold by Tyco after acquiring the Ansul Company. At all relevant times, Tyco designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing

PFAS used in firefighting training and firefighting activities. Tyco has its principal place of business at 1 Stanton St., Marinette, Wisconsin 54143.

35.     Defendant Raytheon Technologies Corporation (hereinafter "Raytheon") is a Delaware corporation with its principal place of business in Massachusetts. Raytheon is a successor-in-interest to United Technologies Corporation. Raytheon merged with United Technologies Corporation in April of 2020. At all relevant times, Raytheon designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. Raytheon's address of its registered agent is at 1209 Orange Street, Wilmington, Delaware 19801.

36.     Defendant UTC Fire & Security Americas Corporation, Inc. (hereinafter "UTC Fire") is a North Carolina corporation with its principal place of business in North Carolina. On information and belief, UTC Fire became a subsidiary of Raytheon. UTC Fire designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities. UTC Fire has its principal place of business at 3211 Progress Dr., Lincolnton, North Carolina 28092.

37.     Defendant John Doe is a corporation, business, legal entity, or other person. At all relevant times, John Doe designed, marketed, developed, promoted, manufactured and otherwise sold or handled AFFF products containing PFAS used in firefighting training and firefighting activities.

38.     The term, "Defendants," refers to all Defendants named herein, jointly and severally.

39.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.

40.     This Court has jurisdiction over the Defendants in this case pursuant to Case Management Order No. 3 ("CMO # 3"). Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Eastern District of Missouri.

41.     In accordance with CMO # 3, Plaintiff designates the United States District Court for the Eastern District of Missouri as "home venue." Venue is proper in the home venue pursuant to 28 U.S.C. § 1391 because the events or omissions that are the basis of Plaintiff's claims occurred in substantial part in this judicial district, Defendants conducted business within the district, and Plaintiff was a resident of this district.

## GENERAL ALLEGATIONS

42.     Defendants engaged in the designing, marketing, developing, promoting, and manufacturing of AFFF products Plaintiff utilized throughout his career as a firefighter dating back to 1962.

43.     AFFF products contains a group of synthetic toxic chemicals called PFAS which include PFOA and PFOS.

44.     Since 1962, Plaintiff was exposed to the AFFF products manufactured by Defendants that contained PFAS which research proves causes higher potential risk of various types of cancer along with other diseases.

45.     Plaintiff was never warned about the health hazards of AFFF products nor the carcinogenic effects of AFFF exposure.

46.     Plaintiff was regularly exposed to AFFF products during training exercises, active fire scenarios, and each time he filled up his fire extinguisher tank.

10

47.     After years of exposure to AFFF products, Plaintiff was diagnosed with thyroid cancer and NEC, a form of cancer.

48.     AFFF was manufactured to extinguish hydrocarbon fuel-based fires which cannot adequately be extinguished with water, otherwise called Class B fires.

49.     The PFAS contained in the AFFF contaminate a human's blood after exposure due to the man-made chemical structure of PFAS.

50.     The AFFF products sold by Defendants were used by firefighters, including Plaintiff, at both the Pattonville and Maryland Heights Fire Departments.

51.     As the exposure to PFAS continues, the accumulation of the PFAS persists and results in higher risks to serious medical conditions. These conditions include kidney, testicular, pancreatic, bladder, thyroid, and prostate cancers.

52.     In the United States, AFFF products containing PFOA and PFOS were introduced in the 1960s and quickly became the primary firefighting foam among firefighters.

53.     Manufacturers of AFFF were warned of the potential harmful effects resulting from human-use of the AFFF products containing PFAS, including firefighters using AFFF to extinguish Class B fires.

54.     In the 1960s, research conducted regarding animal toxicity testing performed by Defendants indicated that the use of PFAS, including PFOA, resulted in adverse health effects on the liver, testes, and adrenals in various animals. Studies also showed that PFAS persist within the environment, meaning they do not break down, and instead accumulate over time.

55.     Fittingly, some scientists have called PFAS, "forever chemicals."

56.     By the 1970s, additional research and testing conducted indicated that PFAS containing PFOA and PFOS accumulate in the blood/body of exposed individuals with each

additional exposure. PFOA and PFOS, due to their man-made chemical structure, binds to proteins in the blood of exposed individuals.

57.     By the end of the 1980s, Defendants, specifically 3M and Dupont, knew PFAS had been detected in the bloodstream of exposed individuals.

58.     In the 1980s, research conducted by Defendants also showed that PFOA had caused testicular tumors in rats. This discovery lead Defendant DuPont to internally classify PFAS as animal carcinogens and possibly human carcinogens.

59.     Despite continued studies and research conducted by Defendants, including at least DuPont, regarding the cancer risks and adverse health effects caused by exposure to PFAS, Defendants did not publish the studies or disclose them to any governmental entities as required by law.

60.     Defendants understood that PFAS persist and accumulate in the blood/body of individuals exposed to the chemicals. This is particularly true of longer-chain PFAS, such as PFOA and PFOS, which have a long half-life indicating it would take a significant amount of time before even half of the accumulation of chemicals would eliminate.

61.     In the 1990s, Defendants performed additional research indicating PFOA chemical exposure resulted in Leydig cell, liver, and pancreatic cancer in another rat study.

62.     At the end of the 1990s, the Defendants understood that the PFOA that caused cancer in the rats studied must be presumed to present potential cancer in humans unless Defendants determined a reason why such carcinogens effect were present in rats only.

63.     In 2005, the United States Environmental Protection Agency fined DuPont more than ten (10) million dollars for the company's failure to alert and report to the agency the

substantial risk of harmful effects PFOA exposure had on human health, a violation of the Toxic Substances Control Act (TSCA) and the Resource Conservation and Recovery Act (RCRA).

64.     By 2010, research and additional testing was performed by Defendants which revealed health impacts of PFAS on exposed workers. Workers exposed to PFOA experience increased cancer incidence, hormonal changes, lipid changes, and thyroid and liver impacts.

65.     Despite the research findings, the Defendants assured entities, such as the United State Environmental Protection Agency and state and local agencies, that exposure to PFAS does not result in significant health risks.

66.     The EPA and other agencies requested Defendants to refrain from using certain PFAS. Defendants then began manufacturing or using chemicals with shorter carbon chains, commonly known as GenX.

67.     However, the new PFAS containing fewer carbons have also been found in human blood. Specifically, Defendants DuPont and Chemours, were aware that short-chain PFAS had caused the same adverse health effects like testicular, liver, and pancreatic cancers in rats as had been discovered in rat animal trials with non-short-chain carbon PFAS.

68.     Short-chain PFAS exposure studies and research performed by or on behalf of Defendants did not indicate a significant change in the risks to human health. Instead, short-chain PFAS research presented the same or similar risks as other PFAS research.

69.     Short-chain PFAS exposure in animal studies resulted in tumors similar to the long-chain PFAS animal studies.

70.     Defendants continued to assure and represent to various governmental entities and to the public that PFAS, as well as the new short-chain PFAS, presented no significant health risks or harm to human health.

71. In 2012, an independent panel of epidemiologists, the, "C8 Science Panel," publicly announced that exposure to PFOA represents a "probable link" to kidney cancer, testicular cancer, thyroid disease, ulcerative colitis, and diagnosed high cholesterol.[1]

72. Despite this report, the Defendants, individually or collectively, continued to assure to governmental entities and to the public that its AFFF products were safe and did not present risk of harm to exposed individuals.

73. Defendants shared and/or should have shared among themselves the information related to the accumulation of PFAS in the human blood/body as well as the negative health effects discovered based on the relevant research.

74. In 2016, the United States Environmental Protection Agency issued a health advisory warning of the potential for cancer, immune effects, thyroid effects, and other negative effects due to the exposure of PFAS.

75. Studies have also linked high level of exposure of PFAS to lowered vaccine effectiveness due to the suppression of the immune system – a particularly troubling finding as the COVID-19 vaccine begins to be administered.

76. Recent research studies have linked high exposure to PFAS to cancers.

77. As of 2020, PFAS have been detected in the blood of over 90% of the United States population despite the fact that PFAS do not occur naturally.

78. Since PFAS do not occur naturally, PFAS detected in the blood/body of humans are direct results of the acts and omissions by Defendants.

---

[1] C8 Science Panel, *C8 Probable Link Reports,* (Dec. 2011 – Oct. 2012), available at http://www.c8sciencepanel.org/prob_link.html (accessed January 4, 2021).

79.     Defendants continued to assert the safety of the AFFF products and took steps to challenge and discredit independent scientific studies that indicated that exposure to PFAS leads to adverse health effects.

80.     Defendants misrepresented the safety of products containing PFAS to the public, governmental entities, and to the Plaintiff which denied him the opportunity to become fully alerted to the medical significance of PFAS exposure.

81.     To this day, Defendant deny that PFAS accumulation in an individual's blood represents an injury or even a harm or health risk of any medical significance.

82.     Specifically, Defendant 3M asserts that scientific studies conducted regarding the safety of PFAS are, "either inconsistent or conflicting observations and do not show causation."[2]

83.     However, Defendants have not funded large enough scientific studies to, according to Defendants, confirm causal connections between exposure to PFAS and adverse human health impacts.

84.     Defendants were and/or should have been aware or knew or could reasonably foresee that the designing, marketing, developing, manufacturing, or otherwise selling or handling of AFFF products containing PFAS would result in the accumulation of chemicals in the blood/body of Plaintiff.

85.     Defendants were and/or should have been aware or knew or could reasonably foresee that the designing, marketing, developing, manufacturing, or otherwise selling or handling of AFFF products containing PFAS would cause injury, harm, and risk of serious health conditions to Plaintiff based on Defendants' own research on the negative health consequences due to exposure of PFAS.

---

[2] 3M, *3M's Commitment to PFAS Stewardship*, https://www.3m.com/3M/en_US/pfas-stewardship-us/ (accessed January 11, 2021).

15

86.    Defendants failed to alert the proper governmental entities or the public about the dangers PFAS contributed to human health after exposure.

87.    Defendants failed to seek permission or the consent of Plaintiff before such acts and/or omissions caused Plaintiff to be exposed to AFFF products containing PFAS resulting in an accumulation of PFAS in Plaintiff's body/blood.

88.    Defendants failed to notify and warn its AFFF product users, including Plaintiff, of the serious health risks associated with the use of AFFF products.

## COUNT I - NEGLIGENCE

89.    Plaintiff hereby incorporates ¶¶ 1 - 80 above by reference as if fully set herein.

90.    Defendants designed, marketed, developed, promoted, manufactured, or otherwise sold or handled AFFF products containing PFAS in the regular course of its business.

91.    Defendants had a duty to exercise reasonable care in the designing, marketing, developing, promoting, manufacturing and otherwise selling or handling of AFFF products containing PFAS used in firefighting training and firefighting activities.

92.    At all relevant times, Defendants breached its duty to exercise reasonable care in the design, development, promotion, or manufacturing of AFFF products in multiple respect, *including but not limited to:*

    a.    Defendants failed to design the AFFF products so to avoid an unreasonable risk of harm to individuals, including Plaintiff;

    b.    Defendants failed to use reasonable care in testing the AFFF products to avoid risk of harm to human health, including Plaintiff;

    c.    Defendants failed to use reasonable care in inspecting the AFFF products to avoid unreasonable risk of harm to human health, including Plaintiff;

d.      Defendants failed to use appropriate care in instructing or warning the public or adequately reporting to governmental and public agencies regarding the safety of AFFF products containing PFAS so to avoid unreasonable risk of harm to individuals, including Plaintiff;

e.      Defendants failed to use reasonable care in marketing, promoting, and advertising AFFF products containing PFAS to avoid risk of harm to individuals, including Plaintiff;

f.      Defendants failed to use reasonable care in the negligent or careless designing, manufacturing, distributing, or selling of products inherently dangerous to human health;

g.      Defendants negligently and carelessly failed to warn or instruct users of its products about the potential for serious health risks associated with the use of its products; and

h.      Such further carelessness and negligence as the discovery and the evidence will reveal.

93.      As a direct and proximate result of Defendants negligence, Plaintiff sustained the following damages: severe and permanent pain and suffering, emotional pain and suffering, anxiety and fear, and will be caused to undergo treatment in the future and continue to incur the costs associated therewith.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants for such damages as will fairly and justly compensate Plaintiff; for punitive damages in such sum as will serve to punish said Defendants and others from engaging in like conduct; for his costs incurred

herein; and for such other and further relief as the Court deems just and proper under the circumstances.

## **COUNT II – NEGLIGENCE PER SE**

94.     Plaintiff hereby incorporates ¶¶ 1 - 85 above by reference as if fully set herein.

95.     At all relevant times, Defendants had a duty not to violate federal statutes and regulations.

96.     Defendants have violated the following federal laws and regulations, including but not limited to, 33 U.S.C. §§ 1311(a), 1342 and 42 U.S.C. §§ 6921-6939e. These subject statutes impose a duty of care on Defendants with regard to Defendants actions or omissions directed towards Plaintiff's safety and the safety of the general population from the harms Plaintiff suffered.

97.     As a direct and proximate result of Defendant's violation of various enumerated provisions, Plaintiff sustained the following damages: severe and permanent pain and suffering, emotional pain and suffering, anxiety and fear, and will be caused to undergo treatment in the future and continue to incur the costs associated therewith.

98.     The aforementioned negligence, gross negligence, recklessness, and wrongful acts of Defendants showed complete indifference to or conscious disregard for the health and well-being of the public and was outrageous, and punitive damages should be assessed against Defendants, in such sum as will serve to punish Defendant, and to deter Defendants and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants for such damages as will fairly and justly compensate Plaintiff; for punitive damages in such sum as will serve to punish said Defendants and others from engaging in like conduct; for his costs incurred

herein; and for such other and further relief as the Court deems just and proper under the circumstances.

## **COUNT III – BATTERY**

99.     Plaintiff hereby incorporates ¶¶ 1 - 90 above by reference as if fully set herein.

100.     At all relevant times, Defendants possessed the knowledge and research that AFFF products containing PFAS were bio-accumulative in the body/blood of exposed individuals and such accumulation of toxic chemicals potentially results in cancer and other harmful health effects.

101.     Despite this knowledge, Defendants knowingly and intentionally continued to design, market, develop, promote, manufacture, or otherwise sell or handle AFFF products containing PFAS.

102.     Such inaction/action conducted by Defendants described in this complaint resulted in the Plaintiff to continue accumulating PFAS in his blood/body which ultimately led to Plaintiff developing NEC and thyroid cancer.

103.     Defendants did not seek or obtain permission or Plaintiff's consent to accumulate PFAS in his blood/body.

104.     The PFAS accumulation in Plaintiff's body/blood occurred while Plaintiff properly utilized the AFFF products in a manner Defendants intended.

105.     Unconsented entry of PFAS within Plaintiff's body/blood is unlawful, harmful, and offensive physical contact with Plaintiff's body and interferes with Plaintiff's rights and use of possession of Plaintiff's blood/body.

106.     Defendants continue to knowingly and intentionally engage in acts and omissions that result in the unlawful physical contact with Plaintiff which resulted in accumulating levels of PFAS in the Plaintiff's blood/body.

107.    Any reasonable person, including Plaintiff, would find the contact at issue harmful and offensive.

108.    Defendants intentionally acted with the knowledge or belief that the accumulation of PFAS into Plaintiff's body/blood would be substantially certain to result from the acts or omissions described in the Complaint herein.

109.    Defendants never warned Plaintiff of any harmful side effects which may result from exposure to AFFF products.

110.    The Defendants' acts or omissions resulted directly or indirectly in harmful contact with Plaintiff's body/blood.

111.    The presence and the continuing presence of PFAS in Plaintiff's blood/body is offensive, unreasonable, and harmful constituting battery.

112.    The presence of such PFAS in Plaintiff's blood/body was a direct and proximate result of the foregoing acts and omissions by Defendants and caused and is continuing to cause damage to Plaintiff's body in the form of NEC and thyroid cancer.

113.    The Defendants' conduct in committing the aforementioned unlawful and unjustified action was outrageous by reason of an evil motive or reckless indifference to the rights of others and warrants punitive damages assessed against Defendants in a sum as will serve to punish Defendants and deter Defendants and others from like conduct in the future.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants for such damages as will fairly and justly compensate Plaintiff; for punitive damages in such sum as will serve to punish said Defendants and others from engaging in like conduct; for his costs incurred herein; and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT IV – STRICT LIABILITY

114.    Plaintiff hereby incorporates ¶¶ 1 - 105 above by reference as if fully set herein.

115.    Defendants designed, marketed, developed, promoted, manufactured, or otherwise sold or handled AFFF products containing PFAS in the ordinary course of its business.

116.    Defendants had a duty to exercise reasonable care in the designing, marketing, developing, promoting, manufacturing and otherwise selling or handling of AFFF products containing PFAS used in firefighting training and firefighting activities.

117.    As designed, marketed, developed, promoted, manufactured, and otherwise sold by Defendants, the AFFF products were defective and unreasonably dangerous when used in the foreseeable and reasonably intended manner by Defendants.

118.    AFFF products containing PFAS designed, marketed, developed, promoted, manufactured, and otherwise sold by Defendants were defective and unreasonably dangerous in several respects, *including but not limited to*:

a.    AFFF products containing PFAS are hazardous to human health;

b.    Defendants knew or should have known that the manner in which its AFFF products containing PFAS were designed, marketed, developed, promoted, or manufactured was dangerous to human health; and

c.    Defendants knew or should have known that the AFFF products containing PFAS it designed, marketed, developed, promoted, or manufactured placed its users at risk of developing serious health conditions due to the accumulation of chemicals in the blood/body, including Plaintiff.

d.    The AFFF products containing PFAS lacked adequate testing and/or inspection to ensure it was reasonably suitable for its intended purpose and provided adequate user protection; and

e.    The AFFF products containing PFAS lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving its use.

f.    Despite Defendant's knowledge of the dangerous effects PFAS have on human health, Defendants failed to warn users or take any mitigation efforts to reduce or eliminate risk to user's health and safety, including Plaintiff.

119.    At all times pertinent, Plaintiff used the AFFF products in a manner reasonably anticipated and intended by Defendants, to extinguish Class B fires.

120.    At all relevant times, Defendants represented that the AFFF products containing PFAS could be safely used for the ordinary purpose for which it was intended.

121.    Defendants knew or should have known that the AFFF products were defectively designed or defectively manufactured in the particular respects as set forth above.

122.    Furthermore, the AFFF products were in a defective and unreasonably dangerous condition in that Defendants failed to give Plaintiff fair and adequate notice of the danger and possible consequences of using the AFFF products in the intended and appropriate manner.

123.    As a direct and proximate result of the defective condition and unreasonably dangerous nature of the AFFF products, Plaintiff sustained serious personal injury, including conscious physical suffering, and mental anguish.

124.    As a direct and proximate result of the defective condition of the AFFF products, Plaintiff sustained the following damages: severe and permanent pain and suffering, emotional

pain and suffering, anxiety and fear, and will be caused to undergo treatment in the future and continue to incur the costs associated therewith.

125.    The conduct of Defendants showed complete indifference to or conscious disregard for the safety of the public, including Plaintiff, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter said Defendants and others from like conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants for such damages as will fairly and justly compensate Plaintiff; for punitive damages in such sum as will serve to punish said Defendants and others from engaging in like conduct; for his costs incurred herein; and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT V – BREACH OF IMPLIED AND EXPRESSED WARRANTIES

126.    Plaintiff hereby incorporates ¶¶ 1 - 117 above by reference as if fully set herein.

127.    At all times relevant, Defendants designed, marketed, developed, promoted, manufactured, or otherwise sold or handled AFFF products containing PFAS.

128.    At all times relevant, Defendants knew of the purpose AFFF products containing PFAS were intended for and implied or expressly warranted that the product was merchantable and safe for such intended purpose.

129.    Defendants warranted that the AFFF products were merchantable and fit for the purpose of extinguishing Class B fires in a reasonably safe manner.

130.    The Plaintiff, a firefighter, was a reasonably foreseeable user of the AFFF products designed, marketed, developed, promoted, manufactured, or otherwise sold by Defendant to extinguish fires.

131.    The Defendants breached their implied and expressed warranties when its intended use of the AFFF products containing PFAS were neither of merchantable quality nor safe for their intended use due to the potential for serious health diseases such as cancer.

132.    The AFFF products containing PFAS fails to meet any minimum level of quality because the products are defective and unreasonably dangerous to human health.

133.    The warranties were breached, and such breach proximately caused the injuries and damage suffered by Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants for such damages as will fairly and justly compensate Plaintiff; for punitive damages in such sum as will serve to punish said Defendants and others from engaging in like conduct; for his costs incurred herein; and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT VI – FRAUDULENT MISREPRESENTATION

134.    Plaintiff hereby incorporates ¶¶ 1 - 125 above by reference as if fully set herein.

135.    At all times relevant, Defendants knew their AFFF products containing PFAS were defective and unreasonably unsafe.

136.    Defendants conducted various research documenting the harmful effects PFAS have on those exposed to the man-made chemicals.

137.    Defendants negligently, knowingly, willfully, wantonly, intentionally, and/or maliciously concealed from and failed to disclose or warn the Plaintiff, the appropriate governmental entities such as the United States Environmental Protection Agency, or the public about the defective, unsafe, and unfit nature of the AFFF products containing PFAS for its intended purposes and that the products were not of merchantable quality.

138.    Defendants possessed the research and the relevant knowledge that the AFFF products containing PFAS potentially caused and increased the risk of diseases in humans and in animals, specifically cancer.

139.    Despite the knowledge regarding the negative health consequences of exposure to PFAS, Defendants represented to Plaintiff and to others that the AFFF products containing PFAS were safe and did not present serious health consequences.

140.    Defendants knowingly made false statements regarding the safety of AFFF products containing PFAS.

141.    Defendants maintained a duty to the Plaintiff and to the public to warn of the harmful effects AFFF products have on human health.

142.    Defendants, being the marketers, developers, promoters, manufacturers or sellers of AFFF products, were in the superior position to understand the safety of Defendant's products.

143.    Defendants knowingly made false statements that the AFFF products containing PFAS were safe through the use of various marketing materials and public statements.

144.    Despite this knowledge regarding the safety of its' products, Defendants fraudulently misrepresented the safety of the Defendants' products from the Plaintiff and the public.

145.    The facts regarding the harmful health effects that result from the exposure to AFFF products containing PFAS were all material facts that a reasonable person would have considered to be important and necessary when deciding whether or not to use Defendants' products.

146.    Defendants misrepresented to the Plaintiff the true hazardous impact continuous exposure to AFFF products containing PFAS would cause, leaving Plaintiff to justifiably believe the AFFF products were safe to use.

147.    Defendants made false representations and omissions regarding the safety of AFFF products with the intent that Plaintiff rely on such statements and omissions in deciding to use Defendants' products.

148.    The Defendants concealment of the material facts regarding the AFFF products intentionally prevented Plaintiff from acquiring the necessary information needed in order for Plaintiff to make an informed decision to use or not to use Defendants' product due to the lack of safety and effectiveness of Defendant's AFFF products.

149.    Plaintiff has been caused to endure personal injuries and sustain severe and permanent pain and suffering as well as loss of enjoyment of life and economic damages as a proximate result of Defendants' conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants for such damages as will fairly and justly compensate Plaintiff; for punitive damages in such sum as will serve to punish said Defendants and others from engaging in like conduct; for his costs incurred herein; and for such other and further relief as the Court deems just and proper under the circumstances.

## **TOLLING OF THE STATUTES OF LIMITATIONS/ESTOPPEL**

150.    Plaintiff did not, and could not, have had any knowledge of the risk of serious injury resulting from the use of AFFF products containing PFAS manufactured by Defendants.

151.    Within any time period of applicable statute of limitations, Plaintiff could not have discovered, through reasonable diligence, that exposure to Defendants' AFFF products would be harmful to his health.

152.    Plaintiff did not discover any facts that would have caused him to reasonably suspect harmful health effects would result from the exposure to AFFF products.

153.    At all relevant times, Defendants knew of the research and the studies indicating exposure to PFAS heightened the risk of various health diseases, including cancer.

154.    Defendants fraudulently concealed and misrepresented facts and research proving the dangerous health effects that could result from exposure to PFAS contained in AFFF products.

155.    Defendants consistently concealed the risks of exposure to PFAS contained in AFFF products over decades and failed to acknowledge the dangers to human health of exposure to AFFF products through present day.

156.    Based on the foregoing, all and any applicable statutes of limitation have been tolled by operation of the discovery rule with respect to Plaintiff's claims against Defendants.

157.    Defendants owed a duty to consumers, end users, and all other persons coming into contacts with their products, including Plaintiff, to accurately provide safety information regarding its AFFF products.

158.    Despite the research conducted by Defendants, independent epidemiologists, and researchers, Defendants knowingly and actively concealed and misrepresented the safety of AFFF products containing PFAS and the risks to human health.

159.    For these reasons, Defendants are estopped from relying on any statute of limitations in defense to this action.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all allegations, claims, and causes of action asserted herein.

Dated: November 2, 2022                  Respectfully Submitted,

*/s/ Kevin M. Carnie Jr.*
**THE SIMON LAW FIRM, P.C.**
John G. Simon, #35231MO
Kevin M. Carnie Jr., #60979MO
Patrick R. McPhail, #70242MO
800 Market Street, Ste. 1700
St. Louis, MO  63101
(314) 241-2929
(314) 241-2029 Fax
jsimon@simonlawpc.com
kcarnie@simonlawpc.com
pmcphail@simonlawpc.com

**ATTORNEYS FOR**
**PLAINTIFF DAVID SHEPHERD**